Supporting

Documents

I

23

804 & COPY TO RECORDS ON: _____ BY: _____ [ ]CCCMS [ ] EOP [ ] NIMHP

STATE OF CALIFORNIA                                                              DEPARTMENT OF CORRECTIONS AND REHABILITATION

## RULES VIOLATION REPORT

T.A.B.E. Score is not available.

| CDC NUMBER | INMATE'S NAME | RELEASE/BOARD DATE | INST | HOUSING | LOG NO. |
|---|---|---|---|---|---|
| K-93463 | BROWN | | CTF-NOR | WA-108U | VI-12-06-025 |

| VIOLATED RULE NO(S). | SPECIFIC ACTS | LOCATION | DATE | TIME |
|---|---|---|---|---|
| CCR §3005(b) | Delaying A Peace Officer In The Performance Of Their Duties (Conduct) | North Medical Clinic | 12/19/2006 | 1140 hours |

CIRCUMSTANCES

On 12/19/2006, at approximately 1140 hours, while I was assigned as R.N. (Registered Nurse), at the North Facility Medical Clinic, Inmate BROWN, K-93463, WA-108U, became loud and boisterous with R.N. Osajinon. This was interfering with the daily normal clinical operations as the doctor's were having a hard time hearing the patients. It was necessary for Doctor Becker to stop evaluating his patients and gave Inmate BROWN a direct order to leave the clinic twice, however he ignored the orders and refused to comply. It became necessary for me to intervene at this point and Inmate BROWN was ordered to leave the clinic again. I gave Inmate BROWN three (3) direct orders to leave the clinic, however he refused. Inmate BROWN began to escalate the situation by yelling and using foul language. His behavior and his physical demeanor were disruptive and threatening to the point that I feared for my safety, so I activated my personal alarm device. The sounding of the personal alarm device resulted in the total stoppage of normal daily operations of CTF-North, since the alarm initiated a Code-1 response from custody staff.

Inmate BROWN is aware of this CDC-115 RVR and the specific charge. Inmate BROWN is not a mental health patient / participant at any level of care.

| REPORTING EMPLOYEE (Typed Name and Signature) | DATE | ASSIGNMENT | RDOS |
|---|---|---|---|
| ▶ I. Osajinon, Registered Nurse (RN) | | North Medical Clinic | |

| REVIEWING SUPERVISOR'S SIGNATURE | DATE | ☐ INMATE SEGREGATED PENDING HEARING | |
|---|---|---|---|
| ▶ S. A. Detlefsen, Correctional Lieutenant (A) | | DATE | LOC. |

| CLASSIFIED ☐ ADMINISTRATIVE ☒ SERIOUS | OFFENSE DIVISION: "D" 61-90 | DATE | CLASSIFIED BY (Typed Name and Signature) ▶ D. G. Metcalf, Correctional Lieutenant | HEARING REFERRED TO ☐ HO ☒ SHO ☐ SC ☐ FC |
|---|---|---|---|---|

COPIES GIVEN TO INMATE BEFORE HEARING

| ☐ CDC 115 | BY: (STAFF'S SIGNATURE) ▶ | DATE | TIME | TITLE OF SUPPLEMENT |
|---|---|---|---|---|
| ☐ INCIDENT REPORT LOG NUMBER: | BY: (STAFF'S SIGNATURE) ▶ | DATE | TIME | BY: (STAFF'S SIGNATURE) ▶ | DATE | TIME |

HEARING:

PLEA: Inmate BROWN pled NOT GUILTY.

FINDINGS: This CDC-115 is being amended from a specific charge of Delaying a Peace Officer in the Performance of Their Duties to Disobeying a Direct Order and Inmate BROWN is being found guilty of the charge. This CDC-115 is being reduced to Administrative level.

DISPOSITION: Reduced from a Serious RVR-115 to an Administrative RVR-115. Counseled and Reprimanded.

DISPOSITION CONTINUED ON CDC-115C

| REFERRED TO ☐ CLASSIFICATION ☐ BPT / NAEA | | | |
|---|---|---|---|
| ACTION BY: (TYPED NAME) ▶ E. Stephens, Correctional Lieutenant, (SHO) | SIGNATURE ▶ | DATE | TIME |
| REVIEWED BY: (TYPED NAME) ▶ J. L. Sareli, Facility Captain | DATE | CHIEF DISCIPLINARY OFFIER'S SIGNATURE ▶ G.A. Ortiz, Associate Warden, CDO | DATE |
| ☐ COPY OF CDC 115 GIVEN TO INMATE AFTER HEARING | BY: (STAFF'S SIGNATURE) ▶ | | DATE | TIME |

CDC115 (7/88)                115 TB: _____        115 HB: _____

24

STATE OF CALIFORNIA                                                                                    DEPARTMENT OF CORRECTIONS & REHABILITATIC

**RULES VIOLATION REPORT – PART C**                                                            P ___ 2 _ of __

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| K-93463 | **BROWN** | VI-12-06-025 | CTF-NORTH | 01/02/07 |

☐ SUPPLEMENTAL   ☒ CONTINUATION OF: ☐ 115 CIRCUMSTANCES ☒ HEARING ☐ IE REPORT ☐ OTHER_____

**HEARING:** Inmate BROWN appeared before the Senior Hearing Officer on 01/02/07, at 0855 hours. The purpose for the hearing wa explained. Inmate BROWN acknowledges receiving all copies of relevant documents more than 24 hours prior to this hearing.

**INMATE'S HEALTH:** Inmate BROWN stated that his health is good.

**MHDS:** Inmate BROWN is not a mental health patient / participant at any level of care, and did not exhibit behavior that was bizarre, unusual, or uncharacteristic at the time of the events documented in this Rules Violation Report. A referral to the Health Care Services Department for Mental Health Assessment was not made.

Date of discovery: 12/19/06                                    Initial RVR copy issued on: 12/29/06
Hearing started on: 01/02/07                                   Last document issued to inmate on: 12/29/06
DA postponed date: NONE                                       DA results issued date: NONE

**TIME CONSTRAINTS:** Time Constraints were met.

**STAFF ASSISTANT (SA):** A Staff Assistant was not assigned, as the criteria per CCR 3315(d)(2) were not met.

**T.A.B.E.:** Inmate BROWN'S "T.A.B.E." Reading Score is not available. Inmate BROWN· is·fluent·in English and read the charges to th Senior Hearing Officer and explained his understanding of the charges / process / options / instructions to the Senior Hearing Officer's (SHC satisfaction.

**INVESTIGATIVE EMPLOYEE (IE):** An Investigative Employee was not assigned, as criteria per CCR§ 3315(d(1) were not met.

**DA REFERRAL:** NONE

**ADDITIONAL EVIDENCE REQUESTED OR USED:** NONE

**VIDEO TAPE EVIDENCE:** NONE

**INMATE PLEA AND STATEMENT:** Inmate BROWN pled NOT GUILTY, and stated, "I was there for a 602. I wasn't there for medic reasons. When the MTA wanted to take my vitals, I asked her why. I told her I was there for a 602 and it was not required that I be examine RN Ike Osajinon told her he would handle the refusal. When you first come in it is required that you turn in your ID, and ducat. I sat there fo three hours, so I asked Officer Allred to get my ID, and he refused. I went to get my ID so·I could leave and go to the library cause I have court case pending." (Inmate Brown presented me with a written statement and an order on petition for writ of Habeas Corpus). Inma BROWN had no further statement for this hearing)

**WITNESSES REQUESTED OR PROVIDED:** Inmate BROWN did request the presence of witnesses. (RN Ike Osajinon, SMTA/RA N Brown, and Correctional Officer Allred)

**WITNESS TESTIMONY AT HEARING:**

RN Ike Osajinon made the following statement at this hearing:
He was in the clinic but I don't know why he was there. He was so loud.

This Senior Hearing Officer had the following questions for RN Ike Osajinon:
Q:    "What was he saying?"
A:    "He was saying I am not going to sign anything."
Q:    "What was he supposed to sign?"
A:    "Refusal of Treatment."
Q:    "Did he have a ducat for a 602 appeal?"
A:    "Everybody gets screened regardless of what they come there for."

Inmate Brown asked Lieutenant Stephens the following question:
Q:    "Is there a ducat sheet for what an inmate is there for?"
A:    "Yes it is."
Inmate Brown had no further questions for Lieutenant Stephens.

**CONFIDENTIAL INFORMATION:** NONE

<div align="center">(CONTINUED ON PAGE 3 of 3)</div>

| | SIGNATURE OF WRITER: E. Stephens, Correctional Lieutenant, (SHO) | | DATE SIGNED: |
|---|---|---|---|
| ☑ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) | DATE SIGNED: | TIME SIGNED: |

CDC 115-C (5/95)

25

STATE OF CALIFORNIA                                                    DEPARTMENT OF CORRECTIONS & REHABILITATION

## RULES VIOLATION REPORT – PART C                                                    P. ___3___ of ___

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| K-93463 | **BROWN** | VI-12-06-025 | CTF-NORTH | 01/02/07 |

☐ SUPPLEMENTAL    ☒ CONTINUATION OF: ☐ 115 CIRCUMSTANCES ☒ HEARING ☐ IE REPORT ☐ OTHER_____

**FINDINGS:** This finding is based on the information provided in the Rules Violation Report, in which the Reporting Employee, R.N. I. Osajinon, documents that, 1) Inmate BROWN became loud and boisterous with me. It became necessary for Doctor Becker to stop evaluating his patients and gave Inmate BROWN a direct order to leave the clinic twice, however Inmate BROWN ignored the orders and refused to comply. He stated that it became necessary for him to intervene at this point and gave Inmate BROWN three orders to leave the clinic, but Inmate BROWN refused.

2) Based upon the information contained in the CDC-115 and information received from Inmate BROWN, that he was ducated to the medical clinic to have a CDC 602 Inmate/Parole appeal (602) answer at the first level. MTA Brown verified that Inmate BROWN was at the clinic because of a ducat for an appeal. It was noted by me (SHO) that RN I. Osajinon stated during the hearing that Inmate BROWN was yelling, "I am not going to sign anything", which gives some support to Inmate BROWN's statement that medical staff was trying to get his (Inmate BROWN) to sign a "Refusal for Treatment Chrono", and would not give him his ID card so he could leave the medical clinic. It is further noted by me that Inmate BROWN was at the medical clinic from approximately 0800 to 1140 hours. Inmate BROWN stated he went to Officer Allred in an attempt to get his ID card. Officer Allred stated during the hearing that Inmate BROWN asked him to get the ID card for him (Inmate BROWN), but the MTA's would not release the clinic ID card to him. Inmate BROWN additionally stated that it is required by staff that an inmate have his ID card before leaving the medical department. Officer Allred verified that an inmate is required to have his ID card, so staff can know he is done seeing medical staff. It appears to me that Inmate BROWN was caught in a situation of he can't leave the medical clinic because he doesn't have his ID card and the MTA are ordering him out of the area, but would not give him his ID card. It appears to me that Inmate BROWN became upset and yelling and using foul language in an attempt to get his ID card so he could leave the medical clinic and go to the library.

**ADDITIONAL DISPOSITION:** NONE

**ENEMY CONCERNS:** NONE

**APPEAL RIGHTS:** Inmate BROWN was advised he will receive a completed copy of the CDC-115 RVR upon final audit by the Chief Disciplinary Officer. Inmate BROWN was also advised of his right to appeal and the methods of appealing.

| | SIGNATURE OF WRITER: | | DATE SIGNED: |
|---|---|---|---|
| | E. Stephens, Correctional Lieutenant, (SHO) | | |
| ☑ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) | DATE SIGNED: | TIME SIGNED: |

CDC 115-C (5/95)

26

STATE OF CALIFORNIA

**SERIOUS RULES VIOLATION REPORT**

DEPARTMENT OF CORRECTION AND REHABILIT

| CDC NUMBER | INMATE'S NAME | VIOLATED RULE NO(S). | DATE | INSTITUTION | LOG NO. |
|---|---|---|---|---|---|
| K-93463 | BROWN | CCR§ 3005(b) | 12/19/2006 | CTF-NORTH | VI-12-06-025 |

REFERRAL FOR FELONY PROSECUTION IS LIKELY IN THIS INCIDENT ☐ YES ☐ NO

## POSTPONEMENT OF DISCIPLINARY HEARING

| | | | |
|---|---|---|---|
| ☐ I DO NOT REQUEST my hearing be postponed pending outcome of referral for prosecution | INMATE'S SIGNATURE ▶ | | DATE |
| ☐ I REQUEST my hearing be postponed pending outcome of referral for prosecution | INMATE'S SIGNATURE ▶ | | DATE |

DATE NOTICE OF OUTCOME RECEIVED | DISPOSITION

| | | |
|---|---|---|
| ☐ I REVOKE my request for postponement | INMATE'S SIGNATURE ▶ | DATE |

## STAFF ASSISTANT

| STAFF ASSISTANT ☐ REQUESTED ☐ WAIVED BY INMATE | INMATE'S SIGNATURE ▶ | DATE |
|---|---|---|
| ☐ ASSIGNED | DATE | NAME OF STAFF |
| ☐ NOT ASSIGNED | REASON | |

## INVESTIGATIVE EMPLOYEE

| INVESTIGATIVE EMPLOYEE ☐ REQUESTED ☐ WAIVED BY INMATE | INMATE'S SIGNATURE ▶ | DATE |
|---|---|---|
| ☐ ASSIGNED | DATE | NAME OF STAFF |
| ☑ NOT ASSIGNED | REASON | |

EVIDENCE / INFORMATION REQUESTED BY INMATE:

## WITNESSES

WITNESSES REQUESTED AT HEARING (IF NOT PRESENT, EXPLAIN IN FINDINGS)
☐ REPORTING EMPLOYEE ☐ STAFF ASSISTANT ☐ INVESTIGATIVE EMPLOYEE ☐ OTHER_____ ☐ NONE

| WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED | WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTI |
|---|---|---|---|---|---|
| | ☐ | ☐ | | ☐ | ☐ |
| | ☐ | ☐ | | ☐ | ☐ |

**INVESTIGATIVE REPORT: Investigative Employees must interview the inmate charges, the reporting employee, and any others who have significant information, documenting the testimony of each person interviewed. Review of files, procedures, and other documents may also be necessary.**

| | INVESTIGATOR'S SIGNATURE ▶ | | DATE |
|---|---|---|---|
| ☐ COPY OF CDC 115A GIVEN INMATE | BY: (STAFF'S SIGNATURE) ▶ | TIME | DATE |

------ If additional space is required use supplemental pages ------

CDC 115-A(7/88)

27

S1.  OF CALIFORNIA                                                                                                    DEPAR  .T OF CORRECTIONS

**INMATE/PAROLEE**          Location: Institution/Parole Region                                    Category
**APPEAL FORM**                                  CTF-S
CDC 602 (12/87)

1. _____         1. _____

2. _____         2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|-----------|------------------|
| BROWN, Wm | K-93463 | N/A | WA 108 |

**A. Describe Problem:** The problem is with that of Medical and its staff in the lack of training and understanding an inmates rights and institutional policies.

When inmate ask for his ID back from medical staff so that he can leave medical. Medical staff will not adhere to the rules and regulations set forth by the CCR, but only to the rules they see fit and justify the time. Staff will not let you leave Medical without signing a medical refusal treatment slip chrono, or forcing an inmate to sign this chrono.

Now per the prime directive of the CCR § 3351, states in part, "that

If you need more space, attach one additional sheet.

**B. Action Requested:** Appellant respectfully request; that should any part of this appeal be Pratialy Granted, define what is granted and what is denied; 2) that the Chief Medical Supervisor provide training class for his staff regarding inmates rights institutionl policies, topics should cover; a) the right to refuse treatment

Inmate/Parolee Signature: _____Wm Brown_____          Date Submitted: 1-29-07

**C. INFORMAL LEVEL** (Date Received: _____ )

Staff Response: _____

_____

_____

_____

Staff Signature: _____          Date Returned to Inmate: _____

**D. FORMAL LEVEL**
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

_____

_____

~~RECEIVED~~          RECEIVED

Signature: _____          Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim          CDC Appeal Number:

FEB 2007          07-00553

CTF APPEALS          CTF APPEALS

28

First Level ☐ Granted ☐ P. Granted ☐ Denied ☐ Other ______

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: ______ Due Date: ______

Interviewed by: ______

BYPASS

Staff Signature: ______ Title: ______ Date Completed: ______

Division Head Approved: Returned

Signature: ______ Title: ______ Date to Inmate: ______

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

BYPAS

Signature: ______ Date Submitted: ______

Second Level ☐ Granted ☐ P. Granted ☒ Denied ☐ Other FEB 6 2007

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: ______ Due Date: MAR 22 2007

☐ See Attached Letter

Signature: [signature] CC [signature] Date Completed: 2-22-07

Warden/Superintendent Signature: [signature] Date Returned to Inmate: FEB 23 2007

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

Signature: ______ Date Submitted: ______

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION: ☐ Granted ☐ P. Granted ☐ Denied ☐ Other ______

☐ See Attached Letter

Date: [redacted]

CDC 602 (12/87)

ACTION REQUESTED CONTINUED:

at anytime, b) that inmates retain the right to refuse in signing any document presented to them such as "Refusal Chrono's"; 3) that the CDC 115 be dismissed in its entirety without delay and that all of Mr. Browns credits be restored forthwith.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Section A

inmate has the right to refuse Medical Treatment at any time". It is also noted that inmates are not required or obligated to sign any refusal chrono to that effect.

Now the good part of the argument

When you don't comply with signing this refusal chrono, you are given a "Direct Order" to leave.

Situation # 1:

When you don't comply with that direct order, the alarm is pressed, staff respond to a Code One and you are issued a CDC Serious Rule Violation report for Delaying a Peace Officer.

Situation # 2:

When you do comply with that "Direct Order" and you leave Medical without your ID. You are now in violation with the prime directive of the CCR 3019 IDENTIFICATION.

Now in accordance with my First Amendment Rights, in which are governed by the test set forth in TURNER v SAFLEY, 482 US 78, 89 (1987): the restriction is valid "if it is reasonably related to legitimate penological interests."

See Back side

29

the lower standards of deference but not so toothless Thornburgh v
Abbott, 490 U.S. 401, 414 (1989). Prison officials may not "pli[e] conjecture
upon conjecture" to justify their policies. Also see Armstrong v Davis, 275
F3d 849, 874(9th Cir 2001).

Now by the enclosed CDC 115 (RVR) and the contents within this appeal
leads to conformation that staff put Mr. Brown in a "NO" win situation, this
even goes for the action of being found guilty of a Administrative RVR, when
in all reality the 115 should have been dismissed.

This whole entire process screams violation of my First Amendment and
a serious conflict of interest with institutional policies. It is the mere fact
that staff can not handle an inmate saying "NO" to them. When this happens staff
must extort his/her authority upon an inmate just to get their way all for the
purpose to CYA and to exploit their dominate against inmates by using words
such as, "I feared for my safety", instead of handling situations in a professional
manor. "NOT ALL INMATES ARE @SSES!!" Staff must have their way even it goes
along the lines of falsifying documents, aka "CDC 115's", just to get it!

Problem # 2

In accordance with the CCR§ 3320;
All non-confidential documents are to be served upon the inmate prior to the
Hearing taking place. Correct? Well this did not happen in this case. There
was Code One initiated in this matter, correct? Where are the responding staff
reports? That I'm entitled too? I was not served these reports, therefore my
due process right were violated and I was not given a fair and partial Hearing.
These document were deliberately withheld from me and my Hearing. Point blank
and simple violation of Due Process, Wolf v. McDonalld, (1974) 418 US 539. I
am entitle to the documents and I was not given them prior to the Hearing.

Now with all this being said, Mr. Brown was found guilty of Administrative
RVR (115). All cause he wanted his ID back so that he could leave medical. Staff
just could not let that happen they had to find a way to punish Mr. Brown in any
way form or fashion. Staff just could not handle that simple little task and
hand Mr. Brown his ID back when he asked for it. As policy dictates Mr. Brown
is required to have his ID in his possession at all times. When he asked for
it he was refused, placed into restraints and issued a Serous Rule Violation
and found guilty for that RVR. All because Mr. Brown wanted his ID back and
he refused to sign a "Refusal Chrono" to that effect.

Staff deliberately took Mr. Browns right away from him to say "NO"!!

And And fabricated a 115 by stating "I feared for my
safety". Where was the threat? Brown did not
threaten any staff member. If so, produce the responding
staff reports and give mr. Brown a fair Hearing or   Violated!
Dismiss the RVR. Too late for a fair Hearing, Due Process &

ISN, Disposition, also gave false statements, that the Appellate threaten him
at Ad's time did Mr. Brown threaten his man.

DEPARTMENT OF CORRECTIONS AND REHABILITATION
Correctional Training Facility
Soledad, California

SUPPLEMENTAL PAGE

RE:    CTF APPEAL LOG No. *CTF-S-07-00553*
Second Level Reviewer's Response

**BROWN**                     **K93463**                          *WA-108U*

APPEAL DECISION:

DENIED

APPEAL ISSUE:  (1 - Disciplinary)

Dismiss Rules Violation Report (RVR) Log # VI-12-06-025 dated 12/19/06 for "Delaying a Peace Officer in the Performance of their Duties."

APPEAL RESPONSE:

Appellant stated the following in his appeal:

(1) Waited a long time in Medical Department.

(2) Pending court case and had to leave the Medical Department.

(3) Wanted identification card to go to legal library.

(4) Emergency Code 1 activated for my behavior and want those reports.

On 2/16/07, appellant was interviewed by the CTF Appeals Coordinator, Mr. P. G. Dennis, Correctional Counselor II, to provide him the opportunity to explain his appeal and present supporting information or documents. During the interview appellant stated in essence that does not understand why he was written up for refusing a direct order.

Inmate BROWN, CDC # K93463 is not in the MHSDS. The designated level of care is Not Applicable. Consequently a CDC Form 115X, Rules Violation Report: Mental Health Assessment Request was not completed as he did not display any bizarre, unusual, or uncharacteristic behavior at the time of the infraction or the hearing. It is noted Inmate BROWN, CDC # K93463 is fluent in English and does have a T.A.B.E Reading Score above 4.0.

A thorough review of appellant's appeals package, all of his attachments, and his Central File has been completed and reveals the following:

On 12/29/06, Inmate BROWN was issued a CDC 115, RVR Log # VI-12-06-025 for the specific act of "Delaying a Peace Officer in the Performance of their Duties."

Inmate BROWN received all documentation to be relied upon more than twenty-four hours prior to the hearing. The appellant was present at the hearing on 1/2/07. The charges were read to him, and he pled NOT GUILTY, stating "I was there for a 602. I wasn't there for medical reasons. When the MTA wanted to take my vitals. I asked her why. I told her I was there for a 602 and it was not required that you turn in your ID and ducat. I sat there for three hours, so I asked Officer Allred to get my ID, and he refused. I went to get my ID so I could leave and go to the library cause I have a court case pending."



Second Level Reviewer's Response
CTF Appeal Log #*CTF-S-07-00553*
Page 2 of 3

The Senior Hearing Officer (SHO), Correctional Lieutenant, E. Stephens found Inmate BROWN GUILTY based on the following:

**REGULATIONS:** The rules governing the issues are:

**California Code of Regulations (CCR), Title 15, Section 3005**
**California Code of Regulations (CCR), Title 15, Section 3313**
**California Code of Regulations (CCR), Title 15, Section 3315**
**California Code of Regulations (CCR), Title 15, Section 3318**
**California Code of Regulations (CCR), Title 15, Section 3320**
**California Code of Regulations (CCR), Title 15, Section 3323**

The First Formal Level of Review was bypassed per California Codes of Regulations (CCR) 3084.5(b)(4).

In response to Inmate Brown's statements:

1) Waited a long time in medical department: Denied: The institution housed inmates over 219% of planned bed capacity. The Medical department is overcrowded and Inmate Brown's appeal must be answered after an interview with him. Inmate Brown initiated the appeal, and he is aware that an interview with him must be completed to answer the appeal.

2) Pending court case and had to leave the medical department. Denied, inmate Brown is aware that the medical department must interview him and without the interview for the first level appeal response, he could file another appeal for a previous late appeal.

3) Wanted identification card to go to legal library: Denied, Inmate Brown is aware of his responsibility to be patient for a first level response to his CDC 602. However, Inmate Brown's disciplinary disciplinary report indicated that he became loud and used "foul" language. The reporting employee stated the appellant was ordered twice to leave the clinic, but he refused. Inmate Brown escalated the situation by yelling with profane language, and the reporting employee activated her alarm due to a fear for her safety. This resulted in a stoppage of the daily operation of the medical clinic and institution operations.

4) Emergency Code I activated for the appellant's behavior and he wants those reports: Denied, the CDC 115 administrative disciplinary report is all that is necessary to process the infraction.

5) Inmate Brown was fully able to understand his disciplinary due to his reading T.A.B.E. being above 4.0 and no mental health issues.

Appellant has not provided any new or additional information upon which to change the disposition of the Senior Hearing Officer, Correctional Lieutenant, E. Stephens found information that would substantiate his claim to dismiss the CDC 115, RVR Log VI-12-06-025 dated 12/19/06.

Appellant was afforded due process, and he was found guilty based on a preponderance of the evidence presented at the hearing. Therefore, based on the aforementioned, appellant's appeal is being DENIED at the Second Level of Review.

3/

Second Level Reviewer's Response
**CTF Appeal Log #*CTF-S-07-00553***
Page 3 of 3

Per CCR 3084.7, the second level response for administrative disciplinaries, CDC    115 constitutes the department's final level of review.

Reviewed By: _____        2-22-07
P. G. Dennis, Correctional Counselor II                 Date

_____        2-23-07
C. Noll, Chief Deputy, Warden (A)                 Date

PGD/mr

cc:    Appeals Office File
       Inmate's Central File

32

1

2

3

4     In re

5            William O. Brown II

6                    On Habeas Corpus.

SUPERIOR COURT OF CALIFORNIA

COUNTY OF MONTEREY

**FILED**

AUG 1 6 2007

LISA M. GALDOS
CLERK OF THE SUPERIOR COURT
_____DEPUTY
S. GARSIDE

Case No.: HC 5775

ORDER

7

8            On June 18, 2007, Petitioner William O. Brown II filed a petition for writ of habeas

9     corpus.

10           Petitioner is currently incarcerated at Correctional Training Facility (CTF).

11           On June 27, 2007, Petitioner filed a motion to submit exhibit.  This motion is granted.

12    **On numerous occasions**, Petitioner was advised to submit all relevant supporting documents

13    and exhibits at the time of filing of his petitions.  However, Petitioner continues to file his

14    motions to submit exhibits after he files his petitions.  **In the future, the court will deny his**

15    **motions to submit exhibits unless he can show good cause as to why he could not have**

16    **submitted relevant documents or exhibits at the time of filing of his petitions.**

17           Petitioner claims that he is being denied certain privileges or programs pursuant to CTF

18    Operational Procedure No. 88.  On or about January 7, 2007, Petitioner submitted an appeal.

19    (CTF-S-07-00106.)  Petitioner has an A1A unassigned status.  In his appeal, he claimed that CTF

20    is denying him certain programs or privileges pursuant to CTF Operational Procedure No. 88.

21    His appeal was partially granted at the first level *on February 1, 2007*.  His appeal was partially

22    granted at the second level *on February 2, 2007*.  On or about February 15, 2007, Petitioner

23    submitted his appeal to the Director.  On or about June 5, 2007, the Director returned his appeal

24    on the ground that Petitioner's appeal was missing the second level response.  On or about June

25

33

1

1   17, 2007, Petitioner again submitted his appeal to the Director, explaining that the first and

2   second level reviews were done at the same time.

3        Petitioner's second claim concerns the Rules Violation Report VI-12-06-025.

4        On December, 19, 2006, Petitioner went to the North Facility Medical Clinic to have a

5   CDC602 Inmate/Appeal answer at the first level. He was not there to get medical treatment.

6   After waiting several hours, Petitioner attempted to leave the medical clinic and asked for his

7   identification card back. The medical staff tried to get Petitioner to sign a "Refusal for

8   Treatment Chrono" and would not give him his identification card. It was required by staff that

9   an inmate have his identification card before leaving the medical department. Petitioner became

10  loud. It was necessary for Doctor Becker to stop evaluating his patients and gave Petitioner a

11  direct order to leave the clinic twice. Petitioner refused to leave the clinic. Registered Nurse I.

12  Osajinon intervened at this point and gave Petitioner three orders to leave the medical clinic and

13  Petitioner refused. Registered Nurse Osajinon activated his personal alarm device. The

14  sounding of the personal alarm device resulted in the total stoppage of normal daily operations of

15  the CTF-North since the alarm initiated a Code 1 response from custody staff.

16       On December 19, 2006, Petitioner was issued a Rules Violation Report, for delaying a

17  peace officer in the performance of their duties. (RVR VI-12-06-025.) On January 2, 2007, the

18  Senior Hearing Officer amended the Rules Violation Report from a charge of delaying a peace

19  officer in the performance of their duties to disobeying a direct order. The Senior Hearing

20  Officer reclassified the Rules Violation Report as an "administrative" Rules Violation Report.

21  *No credits were forfeited.* The Senior Hearing Officer found Petitioner guilty of disobeying a

22  direct order. On or about January 29, 2007, Petitioner submitted an appeal, challenging the

23  guilty finding of delaying a peace officer in the performance of their duties. (CTF-07-00553.)

24  His appeal was denied at the second level. Petitioner submitted his appeal to the Director. On

25  June 4, 2007, the Director properly returned his appeal. A second level review constitutes the

1  department's final action *on appeals of disciplinary actions classified as "administrative"*

2  *pursuant to California Code of Regulations, title 15, section 3314.*

3      A prison administrator's decision must be based on some evidence.  *Superintendent v.*

4  *Hill* (1985) 472 U.S. 445, 455.  This some evidence standard is minimally stringent.  The

5  relevant question is whether there is any evidence in the record that could support the conclusion

6  reached by the disciplinary board.  *Id.* at pp. 455-456.

7      Pursuant to California Rules of Court, Rule 4.551(b), the court requests an informal

8  response from the Attorney General's Office (Respondent).  The informal response should

9  address the following questions: 1) Why did the medical staff attempt to have Petitioner sign the

10  "Refusal for Treatment Chrono" although he was not there to get medical treatment?; 2) Why did

11  the medical staff refuse to return to Petitioner his identification card when he attempted to leave

12  the medical clinic?; 3) Is an inmate required to carry his identification card at all times?; 4)

13  Given the fact that "[Petitioner] was caught in a situation of he can't leave the medical clinic

14  because he doesn't have his ID card and the MTA[s] are ordering him out of the area, but would

15  not give him his ID card (See Rules Violation Report)," why shouldn't the guilty finding of

16  disobeying a direct order be reversed?;  5) Did CTF officials issue *a separate second level*

17  *response* for Petitioner's appeal, CTF-S-07-00106, or does a first level response dated February

18  1, 2007 *also constitute a second level response*?; and 6) If so, when will the Director's level

19  response for Petitioner's appeal, CTF-S-07-00106, be completed?

20      The informal response shall be filed within 15 days from the date of service of the order.

21  Petitioner may file a reply within 15 days from the date of service of the informal response upon

22  Petitioner.

23

24

25

1          IT IS SO ORDERED.

2     Dated: 8-16-07

3

4                                                   _____
                                                    Hon. Gary E. Meyer
5                                                   Judge of the Superior Court

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*ED.,UND G. BROWN JR.*
*Attorney General*

*State of California*
*DEPARTMENT OF JUSTICE*



455 GOLDEN GATE AVENUE, SUITE 11000
SAN FRANCISCO, CA 94102-7004

Public: (415) 703-5500
Telephone: (415) 703-5741
Facsimile: (415) 703-5843
E-Mail: Amanda.Murray@doj.ca.gov

September 14, 2007

The Honorable Gary E. Meyer
Monterey County Superior Court
P.O. Box 1051
Salinas, CA 93902-0414

RE:   INFORMAL RESPONSE
      In re William O. Brown, II, Case No. HC 5775

Dear Judge Meyer:

Petitioner William O. Brown, II, challenges: (1) his finding of guilt for the administrative violation of disobeying a direct order (Rules Violation Report, Log No. VI-12-06-025); and (2) the alleged denial of certain prison programs and privileges. However, Brown's petition is without merit. First, Brown's administrative rule violation should not be reversed – he was properly counseled and reprimanded for his misconduct and was not adversely affected by the decision. Second, Brown failed to appeal the alleged denial of prison programs and privileges to the second level of review and, thus, failed to exhaust his administrative remedies. Accordingly, the petition should be denied.

1.   **Brown's Administrative Rule Violation Should Not Be Reversed:  He Was Properly Reprimanded and Counseled For His Unruly Behavior in the Correctional Training Facility's Medical Clinic and Did Not Lose Any Credits Adversely Affecting His Incarceration or Parole Eligibility.**

   a.   **Factual Background.**

On December 19, 2006, Brown was in the Correctional Training Facility's (CTF) North Facility Medical Clinic waiting to be interviewed for an inmate appeal. (Ex. A,  Rules Violation Report (Log No. VI-12-06-025), pp. 2-3.) As required, Brown provided medical staff with his identification card and pass entitling him to be in the facility. (*Id.* at p. 2.)

After waiting several hours to be seen for his appeal, Brown decided to leave. (Ex. A at p. 2; Petn. at p.3.) According to Brown, medical staff attempted to have him sign a "Refusal for Treatment Chrono." (*Id.* at pp. 2-3; Petn. at p. 3.) Brown refused to sign the document, telling medical staff that he was not there for treatment but resolution of an appeal. (*Ibid.*) Brown also

*37*

The Honorable Gary E. Meyer
September 14, 2007
Page 2

requested his identification card because it was required to leave the facility, but was refused by medical staff. (*Ibid.*)

Frustrated by the situation, Brown became angry and began yelling – his behavior disrupted the medical facility's operations and doctors were having difficulty hearing their patients. (Ex. A at p. 1.) Thus, a doctor was forced to stop evaluating his patients and gave Brown two direct orders to leave the facility. (*Ibid.*) Because medical staff would not give him his identification card, Brown refused to comply with the doctor's orders. (*Id.* at pp. 1-2.) A nurse practitioner gave Brown three additional orders to leave the clinic. (*Ibid.*) He also ignored these orders. (*Ibid.*)

Brown continued escalating the situation by yelling and using offensive language. (Ex. A at p. 1.) His aggressive behavior and physical demeanor caused the nurse practitioner to fear for his safety and activate his personal alarm, causing CTF's North Facility to stop its normal operations and initiate an emergency response. (*Ibid.*)

Because of his misconduct, Brown was issued a serious rules violation report for delaying peace officers in the performance of their duties. (Ex. A.) On January 2, 2007, Brown received a disciplinary hearing for his violation. (*Ibid.*) After reviewing the evidence, the hearing officer reduced Brown's rules violation to an administrative charge for disobeying a direct order. (*Id.* at p. 1.) Brown did not lose any credits, but was counseled and reprimanded for his conduct. (*Ibid.*)

Brown appealed his finding of guilt, requesting that the rules violation report be dismissed and that his lost credits be restored. (Ex. B, Inmate Appeal, Log No. CTF-S-07-00553.)[1] His appeal bypassed the informal and first formal level of review and was denied at the second level of review. (*Ibid.*) Under the California Department of Corrections and Rehabilitations' (CDCR) regulations, the second level of review is CDCR's final level of review for appeals challenging administrative disciplinary violations. (*Id.*; Cal. Code Regs., tit. 15, § 3084.7.)

b.    **Discussion.**

Brown was properly counseled and reprimanded for his unruly behavior at CTF's medical clinic: Understandably frustrated by the conflict between being ordered to leave the medical clinic and being denied his identification card (which was necessary to leave the facility), Brown escalated the situation by becoming loud, yelling, and using offensive language. His disruptive behavior and physical demeanor was so egregious that it caused the nurse practitioner to fear for his safety and activate his personal alarm initiating an emergency response from prison staff. (Ex. A at p. 1.) Accordingly, Brown's behavior threatened institutional safety and security and

---

1.  Although requested in his appeal, Brown did not lose any credits – the hearing officer merely counseled and reprimanded him for his misconduct. (Ex. A.)

38

The Honorable Gary E. Meyer
September 14, 2007
Page 3

he was properly reprimanded and counseled for his misconduct. (*See e.g.*, Cal. Code Regs., tit. 15, § 3314, subd. (I) [administrative violations include use of vulgar or obscene language].)

Moreover, there is no evidence that Brown was adversely affected by his administrative violation. (*People v. Duvall* (1995) 9 Cal.4th 464, 474 [in a habeas petition, the burden is on petitioner to establish a prima facie case for relief; the petition should state the facts on which relief is sought and include copies of reasonably available documentary evidence supporting the claim].) The hearing official merely counseled and reprimanded Brown for his behavior – Brown did not lose any credits affecting his current incarceration or parole eligibility. (Ex. A at p. 1; Ex. C, Legal Status Summary; Ex. D, Chronological History; Ex. E, Initial ASU/Annual Review [administrative violation noted, but did not affect Brown's classification score].) Accordingly, Brown cannot show he was harmed by his administrative violation.

Thus, Brown's administrative rule violation should <u>not</u> be reversed: he was not adversely affected by his violation and he was properly reprimanded and counseled for his behavior. As such, his petition should be denied.

2.    **Brown's Appeal Challenging CTF's Alleged Denial of Prison Programs and Privileges Was Not Appealed to the Second Level of Review and Brown Failed to Exhaust His Administrative Remedies.**

   a.    **Factual Background.**

On January 7, 2007, Brown filed an inmate appeal alleging that CTF was denying him certain programs and privileges. (Petn. at pp. 5-6.) Four days later, he received a notice that his appeal had been sent for review at the first formal level. (Ex. F, Inmate Appeal Assignment Notice, dated 1/11/07.) The letter advised that Brown would have 15 days to appeal to the second level of review after receiving a first level response. (*Ibid.*)

On February 1, 2007, prison officials completed a written, reasoned decision at the first level of review, partially granting Brown's appeal. (Ex. G, Inmate Appeal (CDC Form 602), Log No. CTF-S-07-00106; Ex. H, First Level Reviewer's Response.) Before prison staff returned the first level of review response to him, the Associate Warden inadvertently signed and dated Brown's Inmate Appeal (CDC 602) on February 2, 2007, indicating that it had been reviewed and partially granted at the <u>second</u> level of review.

After receiving the prison's response, Brown appealed to the Director's Level of Review, indicating that the first and second levels of review had been completed. (Ex. G.) However, the Director rejected Brown's appeal as incomplete because Brown failed to attach the written response from the second level of review. (Ex. I, Letter from Inmate Appeals Branch, dated 6/5/07.) The Director advised Brown that he could contact prison officials to answer questions about completing the appeals process and properly exhausting his administrative remedies. (*Ibid.*)

*39*

The Honorable Gary E. Meyer
September 14, 2007
Page 4

In response, Brown asserted that the first and second levels of review were done at the same time (February 1 & February 2, 2007, respectively) and that there was no written decision from the second level of response for him to attach to his appeal. (Ex. J, Letter from Brown to Director of Corrections, Inmate Appeals, dated 6/17/07.)

**b.     Discussion.**

Inmates have the opportunity to appeal "any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare." (Cal. Code Regs., tit. 15, § 3084.1, subd. (a).) There is one informal and three formal levels of review. (*Id.*, § 3084.5, subds. (a) - (d).)[2] At each level of review, the original appeal shall be returned to the appellant with a written response stating the appeal issue and reasons for the decision. (*Id.* at § 3084.5, subds. (g).) An administrative appeal is exhausted when the Director decides the appeal at the third formal, and final, level of review. (*Id.*, § 3084.5, subds. (e)(2).)

Here, Brown did not exhaust his administrative appeals because he failed to appeal to the second level of review. Although Brown alleges that the first and second levels of review were completed at the same time, the evidence is to the contrary: (1) Brown failed to complete Section F of the Inmate Appeal, (CDC Form 602) indicating that he was appealing to the second level of review; (2) he did not receive an Inmate Appeal Assignment Notice as he had when submitting his appeal to the first level of review; and (3) the prison's appeals tracking system indicates that Brown only appealed to the first level of review. (Ex. G; Ex. J, Inmate Appeals Tracking System – Level I & II.)

Moreover, Brown was aware (or should have been aware) of the California Department of Regulations and Rehabilitations' (CDCR) policies and procedures for processing inmate appeals and the requirements for exhausting his administrative remedies: Brown has access to CDCR's regulations stating that he would receive a written, reasoned response at each level of review; he has filed numerous inmate appeals, suggesting that he knows how to appeal to the second level of review and exhaust his administrative remedies; and the rejection letter from the Director's Level of Review advised him to request assistance from prison officials regarding the appeals process – if he had done so, prison officials could have corrected the Associate Warden's inadvertent error and advised Brown to formally submit his appeal to the second level of review. (Cal. Code Regs., tit. 15, § 3084.5, subd. (d); Ex. I; Ex. J.)

Accordingly, Brown should have filed the appeal at the second level of review and, after receiving a response, appealed to the Director's Level of Review, including the prison's responses at the first and second levels of review. However, prison officials cannot respond to appeals where the aggrieved party has failed to continue the administrative process and has failed

---

2. Under certain circumstances, an inmate's appeal may bypass the informal or formal levels of review. (Cal. Code Regs., tit. 15, § 3084.5, subd. (a)(3)(A)-(H), (b)(1)-(4), (c), & (d); Id. at § 3084.7 (d)(4)(B).)

The Honorable Gary E. Meyer
September 14, 2007
Page 5

to exhaust his administrative remedies. (Cal. Code Regs., tit. 15, § 3084.6, subd. (a), § 3084.5, subds. (e)(2).) Therefore, the Court should deny Brown's petition.

**Conclusion.**

Brown's petition is without merit. First, Brown's administrative rule violation should not be reversed – he was properly counseled and reprimanded for his misconduct and was not adversely affected by the violation. Second, Brown failed to appeal the alleged denial of prison programs and privileges to the second level of review and, thus, failed to exhaust his administrative remedies. Accordingly, the petition should be denied.

Sincerely,

AMANDA J. MURRAY
Deputy Attorney General
State Bar No. 223829

For    EDMUND G. BROWN JR.
Attorney General

20102844.wpd

1

2

3

SUPERIOR COURT OF CALIFORNIA

COUNTY OF MONTEREY

FILED

NOV 0 1 2007

CONNIE MAZZEI
CLERK OF THE SUPERIOR COURT
NOEMI P. BECERRA DEPUTY

4

5

6

In re

     William O. Brown II

On Habeas Corpus.

)
)
)
)
)
)

Case No.: HC 5775

ORDER

7

8     On June 18, 2007, Petitioner William O. Brown II filed a petition for writ of habeas

9  corpus.

10     Petitioner is currently incarcerated at Correctional Training Facility (CTF).

11     On June 27, 2007, Petitioner filed a motion to submit exhibit.  This motion was granted.

12     Petitioner claims that he is being denied certain privileges or programs pursuant to CTF

13  Operational Procedure No. 88.  On or about January 7, 2007, Petitioner submitted an appeal.

14  (CTF-S-07-00106.)  Petitioner has an A1A unassigned status.  In his appeal, he claimed that CTF

15  is denying him certain programs or privileges pursuant to CTF Operational Procedure No. 88.

16  His appeal was partially granted at the first level *on February 1, 2007*.  Associate Warden

17  *inadvertently signed and dated Petitioner's appeal on February 2, 2007, indicating that it had*

18  *been reviewed and partially granted at the second level review.*  On or about February 15, 2007,

19  Petitioner submitted his appeal to the Director.  On or about June 5, 2007, the Director returned

20  his appeal on the ground that Petitioner's appeal was missing the second level response.  On or

21  about June 17, 2007, Petitioner again submitted his appeal to the Director, explaining that the

22  first and second level reviews were done at the same time.

23     Petitioner's second claim concerns the Rules Violation Report VI-12-06-025.

24     On December, 19, 2006, Petitioner went to the North Facility Medical Clinic to have a

25  CDC602 Inmate/Appeal answer at the first level.  He was not there to get medical treatment.

42

1    After waiting several hours, Petitioner attempted to leave the medical clinic and asked for his

2    identification card back. The medical staff tried to get Petitioner to sign a "Refusal for

3    Treatment Chrono" and would not give him his identification card. It was required by staff that

4    an inmate have his identification card before leaving the medical department. Petitioner became

5    loud. It was necessary for Doctor Becker to stop evaluating his patients and gave Petitioner a

6    direct order to leave the clinic twice. Petitioner refused to leave the clinic. Registered Nurse I.

7    Osajinon intervened at this point and gave Petitioner three orders to leave the medical clinic and

8    Petitioner refused. Registered Nurse Osajinon activated his personal alarm device. The

9    sounding of the personal alarm device resulted in the total stoppage of normal daily operations of

10   the CTF-North since the alarm initiated a Code 1 response from custody staff.

11         On December 19, 2006, Petitioner was issued a Rules Violation Report, for delaying a

12   peace officer in the performance of their duties. (RVR VI-12-06-025.) On January 2, 2007, the

13   Senior Hearing Officer amended the Rules Violation Report from a charge of delaying a peace

14   officer in the performance of their duties to disobeying a direct order. The Senior Hearing

15   Officer reclassified the Rules Violation Report as an "administrative" Rules Violation Report.

16   *No credits were forfeited.* The Senior Hearing Officer found Petitioner guilty of disobeying a

17   direct order. On or about January 29, 2007, Petitioner submitted an appeal, challenging the

18   guilty finding of disobeying a direct order. (CTF-07-00553.) His appeal was denied at the

19   second level. Petitioner submitted his appeal to the Director. On June 4, 2007, the Director

20   properly returned his appeal. A second level review constitutes the department's final action *on*

21   *appeals of disciplinary actions classified as "administrative" pursuant to California Code of*

22   *Regulations, title 15, section 3314.*

23         On August 16, 2007, the court requested an informal response from the Office of the

24   Attorney General (Respondent). On September 17, 2007, Respondent filed an informal

25

1    response.  On September 28, 2007, Petitioner filed a reply.  On October 1, 2007, Petitioner filed

2    a "Request to Withdraw Motion to Compel."

3          **In his reply,** Petitioner makes references to the following RVRs: 1) RVR VI-08-07-005

4    (attempted battery on a peace officer with a weapon); and 2) RVR VI-07-07-035 (obstructing a

5    peace officer in the performance and duty).  He has also attached a copy of an appeal dated

6    September 16, 2007, challenging the guilty finding of RVR VI-07-07-035 (obstructing a peace

7    officer in the performance and duty) and a copy of an appeal dated February 11, 2007 concerning

8    lack of training of CTF medical staff.  **To the extent that Petitioner is attempting to raise new**

9    **issues with respect to these RVRs and appeals, Petitioner's attempt to raise new issues in a**

10   **reply is improper.  The court declines to address these new issues.**

11         Petitioner's claim that he is being denied certain privileges or programs pursuant to CTF

12   Operational Procedure No. 88 fails because he failed to exhaust his administrative remedies.  See

13   *In re Muszalski* (1975) 52 Cal.App.3d 500, 508.  Petitioner claims that the first and second level

14   reviews were done around the same time (February 1, 2007 and February 2, 2007, respectively).

15   Before CTF prison staff returned the first level response to Petitioner, Associate Warden

16   *inadvertently signed and dated Petitioner's appeal on February 2, 2007, indicating that it had*

17   *been reviewed and partially granted at the second level review.*  However, no second level

18   review was done.  When Petitioner submitted his appeal to the Director's level, the Director

19   advised Petitioner could contact prison officials to answer questions about completing the

20   appeals process.  However, Petitioner failed to contact prison officials to inquire as to why his

21   appeal was missing the written second level response.  Petitioner *did not complete Section F of*

22   *his appeal indicating that he was appealing to the second level review.*  Moreover, Petitioner was

23   aware or should have been aware of the procedures for processing inmate appeals because 1) he

24   has access to the regulations stating that he would receive a written, reasoned response at each

25   level of review, 2) he has filed numerous inmate appeals, suggesting that he knows how to

44

1  appeal to the second level and exhaust his administrative remedies, and 3) the rejection letter

2  from the Director advised him to request assistance from prison officials regarding the appeals

3  process.  If Petitioner had inquired with the prison officials, prison officials could have corrected

4  the Associate Warden's error and advised Petitioner to submit his appeal to the second level.

5     Accordingly, the court **denies Petitioner's claim that he is being denied certain**

6  **privileges or programs pursuant to CTF Operational Procedure No. 88.**

7     Petitioner claims that he was improperly found guilty of disobeying a direct order.  (RVR

8  VI-12-06-025.)  Respondent argues that this administrative rule violation should not be reversed

9  because he was properly reprimanded and counseled for his misconduct and points to an

10  administrative violation of use of vulgar or obscene language (Cal. Code Regs., tit. 15,

11  § 3314(a)(3)(I)).  However, Petitioner was *not found guilty of use of vulgar or obscene language.*

12  It is true that Petitioner disobeyed a direct order of leaving the medical facility.  However, as the

13  Senior Hearing Officer has noted, prison officials placed Petitioner in the situation of disobeying

14  a direct order of leaving the medical facility because prison officials *would not give him his*

15  *identification card back.*  Respondent concedes that Petitioner *needed his identification card to*

16  *leave the medical facility.*  (See Informal Response.)  Respondent's argument that Petitioner has

17  not shown prejudice is not persuasive.  If Petitioner had obeyed the order of leaving the medical

18  facility *and had left without his identification card*, he would have been put in a position of

19  violating California Code of Regulations, title 15, section 3019 (Inmates must carry on their

20  person any identification and privilege card issued for identification purposes, in accordance

21  with institution procedures).

22     Accordingly, the court issues an order to show cause **only with respect to the**

23  **Petitioner's claim that he was improperly found guilty of disobeying a direct order (RVR**

24  **VI-12-06-025)**.  See California Rules of Court, Rule 4.551(c).

25

45

1    The court appoints the Monterey County Alternate Defender Office to represent

2    Petitioner.

3    Respondent shall file a return within 30 days from the date of service of this order.

4    Petitioner may file a denial within 30 days from the date of service of the return upon Petitioner.

5    **The return and denial should be mailed to the attention of the Habeas Corpus**

6    **Department of the Monterey County Superior Court.**

7    IT IS SO ORDERED.

8    Dated:  11-01-07

9

10   _____

11   Hon. Stephen A. Sillman
     Judge of the Superior Court

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## CERTIFICATE OF MAILING

### C.C.P. SEC. 1013a

I do hereby certify that I am not a party to the within stated cause and that on

**NOV 0 5 2007** _____ I deposited true and correct copies of the following document:

ORDER in sealed envelopes with postage thereon fully prepaid, in the mail at Salinas,

California, directed to each of the following named persons at their respective addresses

as hereinafter set forth:

William O. Brown, II K-93463
Correctional Training Facility
PO Box 705
Soledad, Ca 93960

Amanda Murray, DAG
Office of the Attorney General
455 Golden Gate Ave
Suite 11000
San Francisco, CA 94102

Monterey County Alternate Defender Office
111 West Alisal St.
Salinas CA, 93901
Attention: Ms. Latasha Ellis

**NOV 0 5 2007**
Dated: _____

Connie Mazzei,
Clerk of the Court

By _____
Deputy    NOEMI P. BECERRA

47